UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL A. MATSON,

        Plaintiff,

v.

        Case No. 3:18-cv-1484-J-34PDB

SERGEANT WATTS and
OFFICER FINNEY,

        Defendants.

## ORDER

### I. Status

Plaintiff Michael A. Matson, an inmate of the Florida penal system, is proceeding on a pro se Amended Civil Rights Complaint (AC; Doc. 13)[1] against Defendants Sergeant Watts and Officer Finney. Matson asserts that Defendants violated his Eighth Amendment right when Watts used excessive force on him and Finney failed to intervene. He requests declaratory relief, compensatory and punitive damages, and any other relief deemed just.

This matter is before the Court on Defendants' Motion for Partial Summary Judgment (Defendants' Motion; Doc. 42), with exhibits (Docs. 43, 47[2]); and Matson's Motion for Summary Judgment (Plaintiff's Motion; Doc. 41), including a Declaration (Doc.

---

[1] For all documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[2] Defendants filed an Amended Notice (Doc. 52) solely to correct the certificate of service.

41-1). ³ Matson filed a Response in Opposition to Defendants' Motion (Plaintiff's Response; Doc. 49), including exhibits (Docs. 49-1 and 49-2) and a Declaration (Plaintiff's Declaration; Doc. 50). Defendants filed a Response to Plaintiff's Motion for Summary Judgment (Defendants' Response; Doc. 54), with exhibits (Doc. 55). The Motions are ripe for review.

## II. Plaintiff's Allegations

According to Matson, on April 5, 2017, at Hamilton Correctional Institution, he was washing his clothes in his cell when it was time for count. AC at 5. Defendant Watts was outside of Matson's cell "on the walkie-talkie announcing for cell #1204 to be open[ed]." Id. When Matson's cell door opened, Watts directed Matson "to come out of the cell and stand out by the side of it." Id. Matson complied, and Watts told Matson to follow her. Id. Matson, Watts, and Finney walked to the vestibule where "Watts ordered Matson to 'cuff the f*ck up.'" Id. Matson questioned Watts' order, and Watts repeated it. Id. Matson complied, and Watts applied hand restraints "extremely tight cutting the blood circulation in the wrist and hands." Id. Finney told Matson that he was "'in for a serious beating.'" Id. Watts then "began to punch and slap the back of Matson's head and face." Id. Matson yelled for help, but Finney told Watts "to beat his f*cking a*s." Id. Watts "started pulling Matson's shirt tearing it down," and "then swept Matson's feet from the floor, pushing him onto the ground." Id. As Matson tried to stand up, "Watts began kicking and stomping on

---

³ The Court advised Matson of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond. See Order (Doc. 14).

2

Matson's back and sides of his arm" while Matson begged Watts to stop. Id. Finney encouraged Watts to continue the beating before Finney "lifted Matson up in a kneeling position so that Sgt. Watts could continue to punch and slap Matson's head and face." Id. Watts "pushed Matson into the wall and started ramming his head into it." Id. "Matson came down to the ground from the ramming, the[n] Sgt. Watts kicked Matson in the neck causing great pain." Id. Finney and Watts finished their count, and then "Watts told Matson to stand up and take a kick [in] the nuts (testicles)." Id. at 6. Despite Matson's pleas to stop, Watts kicked Matson causing pain in his testicles. Id. Watts told Matson that the next time, she was "going to break his bones and if she can't get him somebody else would." Id. at 5. Matson suffered "swelling above the eye" and "headaches." Id.

### III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rules(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[4] An issue is

---

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter

3

genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

---

> of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks and citation omitted).

"The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

## IV. Analysis

### A. Defendants' Motion

Defendants Watts and Finney seek entry of summary judgment solely on the issue of damages. See Defendants' Motion at 6-10. According to Defendants, Matson did not suffer more than a de minimis physical injury; thus, he cannot recover compensatory or punitive damages. See id. In support of their position, Defendants submitted the transcript of Matson's Deposition (Plaintiff's Deposition; Doc. 43-1), the Declaration of Kellie Caswell, RN, BSN (Caswell Declaration; Doc. 43-2), and Matson's medical records (Doc. 47-2).

5

Ms. Caswell declares, in pertinent part:

According to the medical records compiled as Exhibit B, on April 6, 2017, the day following the incident alleged in the amended complaint, Mr. Matson was assessed by a clinician and the Hamilton Correctional Institution Annex medical facility (Exhibit B-277 - B-279). The Emergency Room Record, (B-277), documents that . . . Mr. Matson was examined at 8:55 a.m. Mr. Matson advised medical staff that an "officer began slapping him on the face and kicking him." At the time of the exam, Mr. Matson was ambulatory, alert and oriented, and was responding to questions verbally. It is documented that the extent of Mr. Matson's injuries were abrasions to his left shoulder. There was no bleeding or other discharge from the abrasions at the time of the assessment. There were no other injuries noted and no treatment was indicated or provided. According to the Diagram of Injury, (B-098), Mr. Matson's abrasions were "superficial," and impacted the "epidural layer only." The Abrasion/Laceration Protocol, (B-279) describes the abrasions as "very superficial."

The first subjective complaint of back pain by Mr. Matson is documented on March 4, 2019. (B-046). Between the date of the alleged incident (04/05/2017) and the first complaint of back pain (03/04/2019), the medical records document that Mr. Matson was examined on 06/08/2017 as a result of an altercation with another inmate. (B-095). Mr. Matson was also assessed for a Post Use of Force (PUOF) incident on 07/09/2018. (B-093).

Also, between the date of the alleged incident (4/5/17), and the date of Mr. Matson's first documented complaint of back pain (3/4/2019), the medical records document eight sick-call requests by Mr. Matson:

- 4/26/2017 (B-080)
- 8/14/2017 (B-071)
- 4/2/2018 (B-065)
- 6/15/2018 (B-060)
- 7/2/2018 (B-056)
- 7/13/2018 (B-054)
- 7/26/2018 (B-052)
- 8/18/2018 (B-049)

6

Each of the sick-call requests noted above were followed by a visit with medical staff. Neither the sick call requests noted above, nor the documentation of the resulting visit with medical staff report any complaints or observations of back pain.

In addition, Mr. Matson's medical records for the period between the date of the alleged incident (4/5/17), and the date of Mr. Matson's first documented complaint of back pain (3/4/2019), include eight Pre-Special Housing Health Evaluations:

- 4/6/2017 (B-086)
- 4/19/2017 (B-081)
- 6/8/2017 (B-078)
- 7/19/2017 (B-075)
- 2/26/2018 (B-069)
- 3/29/2018 (B-067)
- 5/24/2018 (B-062)
- 6/30/2018 (B-057)

Each of these evaluations state that Mr. Matson reported no current medical complaints.

Mr. Matson was examined on multiple occasions for his subjective complaints of back pain between 03/04/2019 and 03/04/2020. The only treatment prescribed for Mr. Matson's complaints was ibuprofen. In addition, Mr. Matson had two x-rays of his Lumbar Spine, (B-104 and B-106), both of which were normal.

I am also aware that Mr. Matson's Amended Complaint alleges that he suffers from headaches as a result of the alleged incident on April 5, 2017. Mr. Matson's medical records do not document any complaints for headaches by Mr. Matson nor is there any record of medical staff documenting any reports of headaches by Mr. Matson.

Based on my training and experience and review of the medical records compiled as Exhibit B, there is no indication that Mr. Matson's subjective complaints of back pain, which began on March 4, 2019 were related to the incident that was alleged to have occurred nearly two years prior, on April 5, 2017.

7

> In my opinion, if Mr. Matson had suffered a significant back injury as a result of the alleged incident on April 5, 2017, he would have begun experiencing symptoms long before March 4, 2019, and I would also expect to see reports of back pain in the medical records well prior to that date.

Caswell Decl. at 3-6 (paragraph enumeration and footnote omitted).

In his Response, Matson maintains that genuine issues of material fact exist, but he largely focuses on the substance of his Eighth Amendment claim. See Plaintiff's Response at 2-4. In Matson's Declaration, he avers that he "still suffer[s] from headaches, and ha[s] lower back pain." Plaintiff's Decl. at 2. He further claims that he "had a large swelling" on his "upper eyebrow" and "swelling and abrasions on [his] upper left shoulder. Id.

At deposition, Matson testified that as a result of this incident, he received bruising and abrasions on his back, swelling either on his eye or between his eyes, lower back issues, and headaches.[5] See Plaintiff's Depo. at 18-19, 29-30. As to the headaches, Matson stated that he experiences "small, little headaches. It's nothing major, though. Nothing real - - it's real small. The headaches, they come and go." Id. at 31.

In Brooks v. Warden, 800 F.3d 1295 (11th Cir. 2015), the Eleventh Circuit Court of Appeals addressed the availability of compensatory and punitive damages as well as nominal damages in suits brought by prisoners under § 1983. The Eleventh Circuit stated:

> [The plaintiff]'s claim, however, is further governed by the Prison Litigation Reform Act of 1995 [(PLRA)], Pub.L. No. 104–134, §§ 802–10, 110 Stat. 1321, 1366–77 (1996). The PLRA places substantial restrictions on the judicial relief that

---

[5] At one point during his deposition, Matson also stated that he had a "busted lip." Plaintiff's Depo. at 29. The parties do not mention a "busted lip" in their papers.

8

> prisoners can seek, with the goal of "reduc[ing] the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Al–Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011) (quoting Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002)). The section of the Act at issue here, 42 U.S.C. § 1997e(e), reads this way:
>
>> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act....
>
> This Court has held that § 1997e(e) applies to all federal civil actions, including constitutional claims brought under § 1983. See Harris v. Garner (Harris II), 216 F.3d 970, 984–85 (11th Cir. 2000) (en banc)....
>
>> In this case, [the plaintiff] did not allege any physical injury . . . . Nevertheless, he sought "compensatory . . . punitive, and nominal damages" from [the defendant]. **Under the statute and our caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury.** See Al–Amin, 637 F.3d at 1198 (punitive); Harris v. Garner (Harris I), 190 F.3d 1279, 1286 (11th Cir. 1999) (compensatory), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in relevant part, 216 F.3d 970. However, we have never had the opportunity in a published opinion to settle the availability of nominal damages under the PLRA. We do today, and we hold that nothing in § 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury.

Brooks, 800 F.3d at 1307-08 (emphasis added).

To satisfy § 1997e(e), a prisoner must assert physical injury that is more than de minimis, but the injury does not need to be significant. See Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 (11th Cir. 2014) (citation omitted); Dixon v. Toole, 225 F.

9

App'x 797, 799 (11th Cir. 2007). Despite § 1997e(e)'s limitation, successful constitutional claimants who lack a physical injury may still recover nominal damages. See Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."). Further, the Eleventh Circuit has instructed courts to dismiss an inmate's compensatory and punitive damages claims under § 1997e(e) without prejudice to allow an inmate to refile when and if the inmate is released. See Harris v. Garner, 216 F.3d 970, 980 (11th Cir. 2000).

Here, Matson's alleged injuries, which include bruising, minor abrasions, swelling, lower back issues, and occasional headaches, cross § 1997e(e)'s de minimis threshold. See Thompson, 551 F. App'x at 557 n.3 (describing an approach of asking whether the injury would require a free world person to visit an emergency room or doctor) (citing Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) ("A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.")). While bruising, abrasions, swelling, and occasional minor headaches may not alone amount to more than de minimis injuries, see Pierre v. Padgett, 808 F. App'x 838, 843 (11th Cir. 2020) (affirming a district court's finding that the plaintiff's "scrapes, scratches, and minor bruising or swelling" were de minimis injuries as these "trivial harms . . . are not atypical nor usually noteworthy in the ordinary course of daily life"), Plaintiff also complains of lower back issues, for which he has received pain medication and two x-rays. Matson testified at deposition that he continues to seek

10

medical treatment for his back issues. See Plaintiff's Depo. at 29-30, 37, 45-46. Whether Matson's back issues are a result of the incident at issue relates to causation and does not bear on whether such alleged injuries are de minimis. Construing all facts in favor of Matson, as the Court must, the Court declines at this point to find that Matson's injuries are de minimis. Thus, Defendants' Motion is due to be denied.

### B. Plaintiff's Motion

Matson argues that he is entitled to summary judgment because there are no genuine issues of material fact, and Watts and Finney cannot produce "credible evidence to refute the well ple[]d allegations/fact in the complaint." Plaintiff's Motion at 4. He attached to his Motion a Declaration, in which he simply "reallege[s] and incorporate[s] by reference statement of facts from the complaint." Declaration of Michael A. Matson (Doc. 41-1). Watts and Finney assert that Plaintiff's Motion "does not come close to meeting his burden of formulating and expressing arguments in support of summary judgment." Defendants' Response at 5. Additionally, they argue that regardless, there are disputed material facts. See id. at 6-8. They each submitted a declaration in support of their position, but Finney's declaration is not signed. See Declaration of Jessica R. Watts (Doc. 55-1); Declaration of Joseph C. Finney (Doc. 55-2).[6]

Upon review, the Court finds that Plaintiff's Motion is due to be denied. Matson does not specifically argue or address the issues relating to his Eighth Amendment claim. Regardless, the parties tell two very different stories about what occurred on April 5, 2017.

---

[6] Defendants' counsel stated that he would file Finney's signed declaration upon receipt, but he has not done so. See Defendants' Notice of Filing (Doc. 55) at 1 n.1.

The Court cannot weigh the evidence or make credibility determinations on summary judgment. See Sears v. Roberts, 922 F.3d 1199, 1208-09 (11th Cir. 2019). Considering the conflicting stories told by the parties, the Court finds that genuine issues of material fact preclude entry of summary judgment on Matson's Eighth Amendment claim.

In light of the foregoing, it is

**ORDERED**:

1. Defendants' Motion for Partial Summary Judgment (Doc. 42) is **DENIED**.

2. Plaintiff's Motion for Summary Judgment (Doc. 41) is **DENIED**.

3. The parties must confer in good faith to discuss the issues and the possibility of settlement. **No later than January 15, 2021**, the parties must notify the Court whether they are able to reach a settlement. If the parties are unable to settle the case privately among themselves, they must file a notice stating whether they believe a settlement conference before a United States Magistrate Judge may be beneficial.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of November, 2020.

MARCIA MORALES HOWARD
United States District Judge

JAX-3 11/4
c:
Michael A. Matson, #X66627
Counsel of Record